IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
LAMB WESTON, INC.,              )
                                )
          Plaintiff,            )
                                )
     v.                         )    1:25cv176
                                )
IVAN MERCADO,                   )
                                )
          Defendant.            )
```

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on the "Motion to Seal" (Docket Entry 9) (the "Motion") filed by Lamb Weston, Inc. (the "Plaintiff"). For the reasons that follow, the Court will deny the Motion without prejudice to refiling as specified herein.

## BACKGROUND

On March 6, 2025, Plaintiff sued Ivan Mercado (the "Defendant"), its former employee, for breach of contract and unfair and deceptive trade practices related to Defendant's alleged illicit retention of Plaintiff's property and improper disclosure of Plaintiff's confidential information. (See generally Docket Entry 1 (the "Complaint").) According to the Complaint, "[t]his action arises out of [Defendant's] brazen, unlawful disclosure of [Plaintiff's] confidential information during an interview (the 'Interview') with [non]party Third Bridge Group Limited ('Third Bridge'), published online and available for purchase on Third Bridge's website, after [Defendant's] termination from

[Plaintiff]."  (Id., ¶ 1.)  Through the Complaint, Plaintiff seeks return of its property, monetary damages, and prospective injunctive relief preventing Defendant from disparaging Plaintiff or disclosing Plaintiff's confidential information.  (See id., ¶¶ 47-61.)  On March 7, 2025, Plaintiff moved for a temporary restraining order and preliminary injunction, seeking an order (i) enjoining Defendant from "further disclosing or using [Plaintiff's] confidential information" (Docket Entry 7 (the "Injunction Motion") at 2)[1] and (ii) requiring Defendant to "return [Plaintiff's] company property" (id. at 3).  (See id. at 1-3.)

Four days later, "[i]n lieu of holding a hearing on [Plaintiff's] request for a temporary restraining order" (Docket Entry 13 at 2), Plaintiff and Defendant jointly moved for entry of a consent order requiring the return of Plaintiff's property and prohibiting Defendant from using or disclosing Plaintiff's confidential information pending resolution of Plaintiff's request for a preliminary injunction.  (See id. at 1-4.)  The Court (per Chief Senior United States District Judge Catherine C. Eagles) granted their request that same day, ordering that Defendant, subject to an exception not relevant here,

> shall not disclose or use, and is enjoined and restrained from disclosing or using, [Plaintiff's] confidential information.  Specifically, Defendant may not disclose to anyone not currently employed by [Plaintiff], or

---

[1]  Docket Entry page citations utilize the CM/ECF footer's pagination.

> otherwise use in any way, [Plaintiff's] current and
> future marketing plans, market positions, strategy,
> budgets, long-range plans, customer information, sales
> data and strategies, pricing data and strategies, cost
> data, formulas, recipes, manufacturing information,
> research and development information, new product
> concepts, personnel information, privileged information,
> or other information used by or concerning [Plaintiff],
> where such information is not publicly available, or has
> been treated as confidential.

(Docket Entry 14 at 1.)[2]

Contemporaneously with filing the Injunction Motion, Plaintiff moved to seal certain material it submitted in support thereof. (See Docket Entry 9 at 1-5.) Specifically, Plaintiff seeks to seal portions of a transcript of the Interview (see Docket Entry 8-2 (redacted version); Docket Entry 11-2 (unredacted version)) (the "Interview Transcript") and portions of an affidavit discussing information in that Interview Transcript (see Docket Entry 8-1 (redacted version); Docket Entry 11-1 (unredacted version)) (the "Crowley Declaration") . (See Docket Entry 9 at 1-2.) Defendant did not respond to the Motion. (See Docket Entries dated Mar. 7, 2025, to present (lacking response from Defendant).)

## DISCUSSION

### I. Applicable Standards

"The operations of the courts and the judicial conduct of judges are matters of utmost public concern." Landmark Commc'ns,

---

2 At the parties' request, the Court (per Chief Judge Eagles) subsequently entered a preliminary injunction with the same terms. (See Docket Entry 19 at 1-2.)

3

Inc. v. Virginia, 435 U.S. 829, 839 (1978). Accordingly, "the courts of this country recognize a general right to inspect and copy . . . judicial records and documents." Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978); see also Columbus-America Discovery Grp. v. Atlantic Mut. Ins. Co., 203 F.3d 291, 303 (4th Cir. 2000) ("Publicity of such records, of course, is necessary in the long run so that the public can judge the product of the courts in a given case. It is hardly possible to come to a reasonable conclusion on that score without knowing the facts of the case."). As the United States Court of Appeals for the Fourth Circuit has explained, "[t]he value of openness in judicial proceedings can hardly be overestimated. 'The political branches of government claim legitimacy by election, judges by reason. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat, which requires compelling justification.'" United States v. Moussaoui, 65 F. App'x 881, 885 (4th Cir. 2003) (quoting Union Oil Co. v. Leavell, 220 F.3d 562, 568 (7th Cir. 2000)).

"The right of public access to documents or materials filed in a district court derives from two independent sources: the common law and the First Amendment." Virginia Dep't of State Police v. Washington Post, 386 F.3d 567, 575 (4th Cir. 2004). "The common law presumes a right to inspect and copy judicial records and documents." Stone v. University of Md. Med. Sys. Corp., 855 F.2d

178, 180 (4th Cir. 1988). This "common law presumption in favor of access attaches to all 'judicial records and documents,'" whereas "the First Amendment guarantee of access has been extended only to particular judicial records and documents." Id. (quoting Nixon, 435 U.S. at 597). Notably, though, the First Amendment applies to "briefing and exhibits filed in connection with motions seeking injunctive relief." Bayer Cropscience Inc. v. Syngenta Crop Prot., LLC, 979 F. Supp. 2d 653, 656 (M.D.N.C. 2013); see also Senderra Rx Partners, LLC v. Blue Cross Blue Shield of N.C., No. 1:18cv871, 2019 WL 9633640, at *2 (M.D.N.C. July 26, 2019) ("The public has a First Amendment right of access to Exhibit 1 to [the plaintiff's] reply brief because it was filed in connection with a motion for preliminary injunction."); RLI Ins. Co. v. Nexus Servs., Inc., No. 5:18cv66, 2018 WL 10602398, at *1 (W.D. Va. Oct. 30, 2018) (concluding that "the more stringent First Amendment right of public access applies" to preliminary injunction materials and collecting cases).

"When the First Amendment provides a right of access, a district court may restrict access 'only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest.'" Washington Post, 386 F.3d at 575 (quoting Stone, 855 F.2d at 180). "The burden to overcome a First Amendment right of access rests on the party seeking to restrict access, and that party must present specific

5

reasons in support of its position." Id.; see also Press-Enterprise Co. v. Superior Ct., 478 U.S. 1, 15 (1986) ("The First Amendment right of access cannot be overcome by [a] conclusory assertion . . . ."). "The public's right of access to judicial records and documents may be abrogated only in unusual circumstances." Stone, 855 F.2d at 182. However, even under that standard, the Fourth Circuit has "suggested that protecting a corporation's confidentiality interest in proprietary and trade-secret information could justify the partial sealing of court records." United States ex rel. Oberg v. Nelnet, Inc., 105 F.4th 161, 171 n.8 (4th Cir. 2024).

Before adjudicating a motion to seal, the Court must provide the public "notice of [the] request to seal[] and an opportunity to object to the request." In re Knight Publ'g Co., 743 F.2d 231, 235 (4th Cir. 1984). "[D]ocketing [the request] reasonably in advance of deciding the issue" satisfies this notice obligation. Id. Finally, if a court grants the sealing request, it must "state the reasons for its decision to seal supported by specific findings[] and the reasons for rejecting alternatives to sealing." Id.

## II. Analysis

The Motion has appeared on the Court's public docket since March 7, 2025. (See Docket Entries dated Mar. 7, 2025, to present.) This public docketing satisfies the procedural prerequisites to consideration of the Motion. See In re Knight,

6

743 F.2d at 235. The docket contains no objections to the Motion. (See Docket Entries dated Mar. 7, 2025, to present.) Despite satisfying that procedural requirement, however, Plaintiff has not established, as a substantive matter, the propriety of its requested sealing.

According to the Motion:

Plaintiff "seeks to maintain under seal permanently, or until deleted by the Court," the following material: "select portions of the Interview Transcript that contain highly confidential Company information" and "select portions of the Crowley Declaration that repeat[] the same confidential information as needed to describe why that information is confidential and obtain emergency relief." (Docket Entry 9 at 2.) "[T]he Interview Transcript reflects the statements that Defendant made during the Interview, which impermissibly revealed highly confidential information about [Plaintiff], including information about [Plaintiff's] market positions, strategy, pricing data and strategies, customer information and manufacturing information." (Id. at 2-3.) In turn, "the Crowley Declaration quotes, discusses, and details certain statements made by . . . Defendant in the Interview, and explains why those statements constitute confidential information. By repeating and [discussing] the content of Defendant's statements, this declaration necessarily also includes confidential information." (Id. at 3.) In Plaintiff's view, it "should not, in

7

order to enforce its rights, be forced to cause the further harmful disclosure (via court records) of this confidential information. Indeed, the additional disclosure of this information in a public filing would further harm [Plaintiff's] competitive standing or otherwise harm its business interests." (Id. at 2.)

"[W]hen a request to seal pertains to publicly available information, the proponent of that request faces an uphill battle," Danzy v. Coloplast Corp., No. 1:19cv1017, 2022 WL 1591968, at *5 (M.D.N.C. May 19, 2022) (collecting cases denying retroactive sealing requests for publicly available material), as, "once announced to the world, the information lost its secret characteristic," Washington Post, 386 F.3d at 579 (brackets and internal quotation marks omitted). See, e.g., Kinetic Concepts, Inc. v. Convatec Inc., No. 1:08cv918, 2010 WL 1418312, at *10 (M.D.N.C. Apr. 2, 2010) (explaining that, if information was previously disclosed, "any restriction on public access to that same information in this case would serve no purpose"); see also United States v. Loughner, 769 F. Supp. 2d 1188, 1196-97 (D. Ariz. 2011) (unsealing search warrant materials, noting that "neither party has made a convincing case that preventing the possible republication of information that has already become a matter of public knowledge is 'strictly and inescapably necessary' to protect a compelling interest").

As Plaintiff concedes, the vast majority of the information that it seeks to seal derives from an Interview "published online and available for purchase on Third Bridge's website" (Docket Entry 9 at 1; see id. at 2-3). (See Docket Entry 8-1 (redacted Crowley Declaration); Docket Entry 8-2 (redacted Interview Transcript).) Moreover, through this lawsuit, Plaintiff seeks an order preventing Defendant from (further) disclosing Plaintiff's confidential information, rather than an order preventing continued dissemination of the Interview or Interview Transcript. (See, e.g., Docket Entry 1, ¶¶ 54, 60-61; Docket Entry 7 at 1-3.) Accordingly, all of the information in the Interview Transcript and most, if not all, of the information in the Crowley Declaration will remain publicly available regardless of the Court's resolution of Plaintiff's sealing request. Yet, the Motion neither addresses the implications of this public disclosure on the sealing request nor explains why, notwithstanding this disclosure, sealing remains appropriate. (See Docket Entry 9 at 1-5.) Plaintiff has thus failed to justify its sealing request. See Danzy, 2022 WL 1591968, at *6 (reaffirming "conclusion that the pertinent portions of the Expert Memorandum, Freeman Report, and Freeman Deposition ceased to warrant protection from disclosure when [the p]laintiff filed those materials on the public docket and neither party took prompt corrective action," and denying sealing request where "[the d]efendant [did] not confront[] (much less overcome the

9

significance of) the fact that, for weeks, the public enjoyed unfettered access to th[ose materials]" (brackets and internal quotation marks omitted)). Nevertheless, "[i]n the exercise of its discretion, the Court will give [Plaintiff] additional time to file . . . a renewed motion which provides more detailed evidentiary and legal support for sealing the allegedly confidential information." Bayer, 979 F. Supp. 2d at 657; see also Kinetic, 2010 WL 1418312, at *10-11 (providing party opportunity to file motion "show[ing] cause why [exhibits of unknown public disclosure status] should remain sealed").

## CONCLUSION

Given the Interview's public disclosure (and the absence of any showing that this litigation will alter the Interview's public availability), Plaintiff has not established entitlement to sealing of the Interview Transcript and Crowley Declaration.

**IT IS THEREFORE ORDERED** that the Motion (Docket Entry 9) is **DENIED WITHOUT PREJUDICE** as follows: (i) on or before May 1, 2025, Plaintiff may file a renewed motion to seal that provides legal and evidentiary support for its sealing requests in light of the Interview's public availability; (ii) the Clerk shall maintain under temporary seal the unredacted Crowley Declaration (Docket Entry 11-1) and the unredacted Interview Transcript (Docket Entry 11-2) until the Court's resolution of any such motion; and (iii), if Plaintiff fails to timely file such motion, the Clerk

10

shall unseal the unredacted Crowley Declaration (Docket Entry 11-1) and the unredacted Interview Transcript (Docket Entry 11-2) on May 2, 2025.

This 17th day of April, 2025.

>  /s/ L. Patrick Auld
>  **L. Patrick Auld**
>  **United States Magistrate Judge**